O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES E. RUCKER III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-2308 |
| | § | |
| SUN DRILLING PRODUCTS | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Defendant Sun Drilling Products Corporation's Motion for Summary Judgment (Document No. 11) and Plaintiff James E. Rucker III's [Cross] Motion for Summary Judgment (Document No. 13). After carefully considering the motions, responses, and the applicable law, the Court concludes as follows:

I. Background

Plaintiff James E. Rucker III ("Plaintiff") brings this race discrimination case against Defendant Sun Drilling Products Corporation ("Defendant"), alleging that Defendant failed to hire him for permanent employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff was employed by Manpower, Inc. ("Manpower"), a temporary staffing agency. Document No. 11 ex. 1 at 73-74. On October 2, 2003, Manpower assigned Plaintiff to a temporary position with Defendant. Id. ex. 1 at 74.

Plaintiff performed warehouse management duties in Defendant's Houston, Texas facility until May 21, 2004.  Id. ex. 1 at 74, 121.

On April 10, 2004, Plaintiff sent an e-mail to Michael Cook ("Cook"), Defendant's Chief Financial Officer, in which Plaintiff expressed interest in obtaining regular, full-time employment with Defendant.  Id. ex. 1 at 73, 81-82; ex. 1-13; ex. 2 ¶ 1.  In response to the e-mail, Cook met with Plaintiff "face to face" and offered Plaintiff a permanent warehouse manager position, contingent upon reaching an agreement on compensation.  Id. ex. 1 at 82-83; ex. 2 ¶ 2.  In that regard, Cook offered Plaintiff a monthly salary of $3,000.  Id. ex. 1 at 155.  Plaintiff countered Cook's offer by requesting an additional $18 per hour for night and weekend work.  Id. ex. 1 at 154-55, 157; ex. 1-13.  Plaintiff also requested a "limited sales agreement," pursuant to which Defendant would pay Plaintiff ten percent of the sales "generated" by him. Id. ex. 1 at 141-42; ex. 1-13.  Cook refused to agree to either of these requests.  Id. ex. 1 at 168-71, 188; ex. 1-13.

Although Plaintiff continued to lobby Cook for the proposed overtime pay and sales agreement, Cook refused to accept Plaintiff's compensation demands.  Id. ex. 1 at 168-71; ex. 1-13. Thus, allegedly "to help smooth things over," Plaintiff sent Cook an e-mail that stated:

> This is the name of my attorney: Martin Shellist, of the Law Firm of Shellist, Lore & Lazarz, P.C./ 3 Post Oak Central/ 1990 Post Oak Blvd, Suite 1910/ Houston, Texas

> 77056/ tel. 713-621-2277/ fax 713-621-0993. I stopped by his office on my way to class on an unrelated matter to ours, but mentioned what I was going through with you concerning my full-time employment negotiations with you. He said he is more than happy to intervene on my behalf at any time if you and I cannot reach an agreement on next week. . . .
>
> I would prefer for you and I to do this, but you don't seem to understand something that probably he can explain better for me; you do not need to use "bait and switch" tactics with me. We agreed on a 36K base, and (I expect you to honor that. We can forget the sales, we can forget whatever I could have brought to Sun, but we cannot forget the Parol Contract over the phone, can we?

<u>Id.</u> ex. 1 at 176-77, 181; ex. 1-13. Plaintiff followed up this e-mail with a second e-mail, again referencing his attorney. <u>Id.</u> ex. 1-13. In response to Plaintiff's conduct during the negotiations, namely, his refusal to accept Defendant's compensation terms and his threats to involve an attorney--which Cook perceived as "a veiled threat of (groundless) litigation"--Cook withdrew the employment offer. <u>Id.</u> ex. 2 ¶ 3. Plaintiff was notified of Cook's decision on May 21, 2004. <u>Id.</u> ex. 1 at 194-96.

Although Plaintiff alleges in his Complaint that Defendant engaged in various types of allegedly discriminatory practices, Plaintiff repeatedly testified during his deposition that the only adverse employment action he suffered was Defendant's failure to hire him for a permanent warehouse manager position and that this is the sole allegation upon which he premises his Title VII claim. <u>Id.</u> ex. 1 at 36, 72-73, 77-78, 87, 112-15, 117-18, 126-28, 193-94. Defendant moves for summary judgment on Plaintiff's failure to hire

3

claim, asserting that: (1) Plaintiff cannot establish a prima facie case that he was treated less favorably because of his race; (2) even if Plaintiff makes out a prima facie case, he cannot raise a fact issue that Defendant's legitimate business reason for its decision not to hire him is a pretext for race discrimination, or that his race was a motivating factor in Defendant's decision not to hire him; and (3) Defendant is entitled to a presumption of non-discrimination under the "same actor" doctrine.

II.  Summary Judgment Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists

4

will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III. Discussion

A. Plaintiff's Objections

As an initial matter, Plaintiff objects to Defendant's summary judgment evidence. *See* Document No. 12 ¶ 11.

1. Plaintiff objects to unspecified "Affidavits," stating that "Defendant relies on conclusory evidence." Id. ¶ 9(a). Plaintiff fails to identify with specificity the portions of the unspecified "Affidavits" to which he objects, and Objection 9(a) is therefore OVERRULED.

2. Plaintiff objects to unspecified "Deposition Excerpts" on the ground that they "are not properly authenticated, but are based on hear-say." Id. ¶ 9(b). Plaintiff's deposition is the only deposition submitted by Defendant, and it contains a Court Reporter's Certification. Moreover, Plaintiff does not allege that those deposition excerpts fail to represent a true record of his deposition testimony. Objection 9(b) is therefore OVERRULED.

3. Plaintiff makes a nonsensical objection to unspecified "Documentary Evidence," stating that "[t]he exhibits, which are verified as authentic establish the following facts that the Plaintiff was offered a job, and establishes employment by Defendant." Id. ¶ 9(c). This objection fails adequately to set forth any legal basis for exclusion under the Federal Rules of Evidence and is therefore OVERRULED.

B. Loftis's Title VII Claim

Title VII proscribes an employer from failing or refusing to hire or otherwise discriminating against any individual because of that individual's race. 42 U.S.C. § 2000e-2(a)(1). The Title VII

inquiry is "whether the defendant intentionally discriminated against the plaintiff." Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). Intentional discrimination can be established through either direct or circumstantial evidence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001). Because Plaintiff presents no direct evidence of discrimination, his claim is analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Id. Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case of discrimination. Id.

The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000). The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)). If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the

7

plaintiff's protected characteristic (mixed-motive alternative). Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

1. Plaintiff's Prima Facie Case

Plaintiff contends that he suffered racial discrimination when Defendant failed to hire him for permanent employment. To establish a prima facie case of discriminatory failure to hire, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position he sought; (3) he was not selected for that position; and (4) the employer awarded the position to someone outside the protected class, continued to seek applicants with the plaintiff's qualifications, or otherwise declined to select the plaintiff on account of his race. *See* McClaren v. Morrison Mgmt. Specialists, Inc., 420 F.3d 457, 462 (5th Cir. 2005); Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004); Okoye v. Univ. of Tex. Houston Health Science Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).

It is undisputed that Plaintiff is a member of a protected class who sought a permanent position with Defendant. The fact that Defendant initially offered Plaintiff a permanent warehouse manager position indicates that Defendant believed Plaintiff was qualified for that position. However, the summary judgment record contains no evidence that Plaintiff was not selected for the position he sought. In fact, the uncontroverted summary judgment

8

evidence is that Defendant offered Plaintiff the warehouse manager position, contingent only on reaching an agreement regarding compensation.

Assuming, however, that Plaintiff was not selected for the warehouse manager position, in that Defendant later rescinded the employment offer, there is no evidence that Defendant selected someone else to fill the warehouse manager position or continued to seek applicants for the position, and Plaintiff points to no evidence from which it could otherwise be inferred that Defendant rescinded the offer on account of Plaintiff's race. Plaintiff alleges that Defendant did not take "these types of actions" against "persons of other races who had served or were serving as warehouse specialists," *see* Document No. 12 at 6, but Plaintiff produces no summary judgment evidence that Defendant treated any other person differently under circumstances nearly identical to his own. *See, e.g.*, Bryant v. Compass Group USA, Inc., 413 F.3d 471, 478 (5th Cir. 2005).

Plaintiff also asserts that "Defendant agreed to hire [him] at a lower wage than the previous person in the same position," but the fact that another employee received a higher salary than was offered to Plaintiff is not probative as to whether Defendant failed to hire Plaintiff on account of his race. Even if the allegation were relevant, Plaintiff fails to produce any evidence that the employee was a nearly identical, similarly situated

individual. *See* Document No. 12 ex. 1 at 201-02. Finally, Plaintiff asserts that "the administration arm of [Defendant] is primarily White." Document No. 12 at 7. Even assuming this assertion to be true, it does not, as Plaintiff contends, "suggest that there were discriminatory tactics being used in the negotiations process" or otherwise indicate that Defendant failed to hire Plaintiff on account of his race.

In sum, the summary judgment record contains no evidence from which it could be inferred that Defendant rescinded its offer of permanent employment on account of Plaintiff's race. Plaintiff has therefore failed to establish a prima facie case of discrimination with respect to the warehouse manager position.[1]

2. <u>Defendant's Legitimate, Non-Discriminatory Explanation and Plaintiff's Evidence of Intentional Discrimination</u>

However, even assuming Plaintiff produced enough evidence to establish a prima facie case of race discrimination on his failure to hire claim, he still has failed to rebut Defendant's proffered legitimate, non-discriminatory reason for its decision, namely,

---

[1] In response to Defendant's motion for summary judgment, Plaintiff appears to suggest that his Title VII claim is actually a claim of discriminatory discharge because he continued to work for Defendant for approximately one week between the date Defendant initially offered him the permanent warehouse manager position and the date Defendant rescinded that offer. Even if Plaintiff premises his claim on a discriminatory discharge theory, the claim fails because Plaintiff has failed to cite any summary judgment evidence from which it could be inferred that Defendant rescinded its offer of employment on account of Plaintiff's race.

10

Plaintiff's conduct during the compensation negotiations and the parties' failure to reach a compensation agreement.

First, Plaintiff has failed to raise a fact issue that this reason is not true but is instead a pretext for race discrimination. Defendant supported its motion for summary judgment with e-mails documenting the compensation negotiations between Plaintiff and Cook; Cook's affidavit, in which he avers that he withdrew Plaintiff's employment offer based on Plaintiff's conduct during the compensation negotiations; and Plaintiff's deposition testimony, in which he confirms that he made the requests described by Cook, that Cook denied them, and that the compensation negotiations ultimately were unsuccessful. *See* Document No. 11 ex. 1 at 194; ex. 1-13; ex. 2 ¶ 3. Nowhere in the summary judgment record does Plaintiff explicitly contest the truthfulness of Defendant's contention that its decision to rescind the employment offer was driven by the unsuccessful compensation negotiations. To the contrary, the summary judgment evidence establishes that Defendant's stated reason for its decision to rescind Plaintiff's employment offer--the failure of the parties' compensation negotiations--was the actual reason for that employment decision.

Second, Plaintiff has failed to raise a fact issue that the failure of the compensation negotiations was not the only reason for Defendant's decision to rescind the offer, and that another

motivating factor was Plaintiff's race. Nothing in the summary judgment record creates so much as a fact issue that race discrimination was a motivating factor for Defendant's failure to follow through with its offer of employment to Plaintiff. Indeed, the fact that the same individual--Cook--both offered Plaintiff the position and rescinded the offer gives rise to an inference that discrimination was *not* Defendant's motive in failing to hire Plaintiff. *See* <u>Faruki v. Parsons S.I.P., Inc.</u>, 123 F.3d 315, 321 n.3 (5th Cir. 1997); <u>Brown v. CSC Logic, Inc.</u>, 82 F.3d 651, 658 (5th Cir. 1996); *see also* <u>Cartagena v. Aegis Mortgage Corp.</u>, 275 F.3d 46 (5th Cir. 2001) (unpublished).

In his response brief, Plaintiff states that Defendant's employment decision was discriminatory and taken on account of his race, but these statements are not competent summary judgment evidence sufficient to defeat Defendant's motion. *See* <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1429-30 (5th Cir. 1996) (en banc) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden. . . . It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing adequate non-discriminatory reason."). Although Plaintiff may *believe* that his troubles with Defendant were motivated by

discriminatory animus, Plaintiff has failed to produce any *factual basis* for his belief that Defendant's dissatisfaction with the compensation negotiations was not the only reason that Defendant rescinded the employment offer. Because the summary judgment evidence does not permit an inference of intentional discrimination, Defendant's motion for summary judgment will be granted on Plaintiff's race discrimination claim.

## IV. Order

For the reasons set forth, it is hereby

ORDERED that Defendant Sun Drilling Products Corporation's Motion for Summary Judgment Record (Document No. 11) is GRANTED, and Plaintiff James E. Rucker III's [Cross] Motion for Summary Judgment (Document No. 13) is DENIED. Plaintiff's Title VII claim is DISMISSED on the merits.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 7th day of October, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE